UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| PHILIP SABATINO OGNIBENE, | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 2:12-cv-01307-RCJ-GWF |
| PHILIP SABATINO LAGORI et al., | ) ) ) | **ORDER AND DEFAULT JUDGMENT** |
| Defendants. | ) ) | |

This case arises out of the alleged forgery of a quitclaim deed. Pending before the Court are a motion to dismiss a third-party complaint and a motion for default judgment. For the reasons given herein, the Court denies the motion to dismiss and grants the motion for default judgment.

I.      FACTS AND PROCEDURAL HISTORY

Plaintiff Philip Sabatino Ognibene has been the owner of real property at 95 E. Windmill Ln., Las Vegas, NV 89123 (the "Property") since December 11, 1992, except for a "brief period in 2003" when he transferred title to Defendant Philip Sabatino Lagori. (*See* Compl. ¶¶ 4–6, Jan. 20, 2012, ECF No. 1-6). When Plaintiff submitted an insurance claim based upon damage to the property sustained during a windstorm in the summer of 2011, the insurance company made out the reimbursement check to Lagori instead of Plaintiff because it believed that Lagori was the owner of the Property. (*Id.* ¶¶ 8–11). Plaintiff then discovered that on June 18, 2007, a quitclaim

deed (the "Quitclaim Deed") to the Property had been recorded in Clark County purportedly by Plaintiff in favor of Lagori. (*Id.* ¶¶ 12–13). The signature on the Quitclaim Deed is not Plaintiffs, but was forged, and Plaintiff does not know who appeared before the Illinois notary listed on the Quitclaim Deed, Carrie Nowak; Plaintiff was not in Illinois on the date of the jurat, May 15, 2007. (*See id.* ¶¶ 14–17). Plaintiff believes Lagori caused someone to forge the Quitclaim Deed, or did so himself, with the assistance of an old photo identification card of Plaintiff's to which Lagori had access. (*Id.* ¶¶ 18–19). Plaintiff believes Lagori may have capitalized on their similar appearance and similar names; Lagori is Plaintiff's son. (*See id.* ¶¶ 20–21). Plaintiff believes it is Lagori who then executed a deed of trust ("DOT") and assignment of rents ("AOR") in favor of Defendant Signature Bank. (*See id.* ¶ 22). The DOT and AOR were recorded on October 16, 2007, and the DOT was later recorded again on July 18, 2008 to correct the name of the trustee. (*See id.* ¶¶ 24–26).

      Plaintiff sued Defendants in state court on January 20, 2012 on seven causes of action: (1) quiet title; (2) declaratory relief; (3) conversion (Lagori only); (4) unjust enrichment (Lagori only); (5) fraud (Lagori only); (6) constructive fraud (Lagori only); and (7) exploitation of an elder person. Signature Bank answered the Complaint and filed a Crossclaim ("CC") against Lagori and a Third-party Complaint ("TPC") against Nowak for indemnity, fraud, breach of contract (Lagori only), and unjust enrichment (Lagori only). (*See* Answer, CC, and TPC, Mar. 1, 2012, ECF No. 1-10). The clerk of the state court entered default in favor of Signature Bank and against Lagori as to the CC. (*See* Default, Apr. 18, 2012, ECF No. 1-13). The clerk of the state court then entered default in favor of Plaintiff and against Lagori as to the Complaint. (*See* Default, May 2, 2012, ECF No. 1-14). Plaintiff and Signature Bank applied to the state court for respective default judgments against Lagori as to the Complaint and the CC, but the state court did not decide those motions before removal. Nowak has asked the Court to dismiss the two claims brought against her in the TPC (indemnity and fraud), and Plaintiff has filed a

motion for default judgment against Lagori in this Court.

## II. LEGAL STANDARDS

### A. Dismissal

#### 1. Personal Jurisdiction

A defendant may move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Jurisdiction exists if: (1) provided for by law; and (2) the exercise of jurisdiction comports with due process. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir. 1980). When no federal statute governs personal jurisdiction, a federal court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where a forum state's long-arm statute provides its courts jurisdiction to the fullest extent of the Due Process Clause of the Fourteenth Amendment, such as Nevada's does, *see Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065), a court need only apply federal due process standards, *see Boschetto*, 539 F.3d at 1015.[1]

There are two categories of personal jurisdiction: general jurisdiction and specific

---

[1] Nevada's long-arm rule restricts extra-territorial jurisdiction to the limits of both the U.S. and Nevada Constitutions. *See* Nev. Rev. Stat. § 14.065(1). However, Nevada's due process clause is textually identical to the federal clause in relevant respects, *see* Nev. Const. art. 1, § 8(5), and the Nevada Supreme Court reads the state clause as coextensive with the federal clause, *see, e.g.*, *Wyman v. State*, 217 P.3d 572, 578 (Nev. 2009). Until 1868, when the Fourteenth Amendment was adopted, the Due Process Clause of the Fifth Amendment did not apply to the states. *See Barron v. City of Baltimore*, 32 U.S. 243, 250–51 (1833) (Marshall, C.J.). The Declaration of Rights that comprises Article I of the Nevada Constitution, which was adopted in 1864, was included in order to impose certain restrictions on the State of Nevada that were already imposed against the federal government under the Bill of Rights, and the Nevada Supreme Court has not interpreted the protections of the Declaration of Rights to exceed the scope of their federal counterparts. Michael W. Bowers, *The Sagebrush State* 43–44 (3rd ed., Univ. Nev. Press 2006); Michael W. Bowers, *The Nevada State Constitution* 24 (1993). During the Nevada Constitutional Convention in 1864, the Due Process Clause of Article I was not debated, although several other provisions of Article I, and even Section 8, were heavily debated. *See generally* Andrew J. Marsh, Official Report of the Debates and Proceedings of the Constitutional Convention of the State of Nevada (Frank Eastman pr., 1866), *available at* http://books.google.com.

1 jurisdiction. General jurisdiction exists over a defendant who has "substantial" or "continuous
2 and systematic" contacts with the forum state such that the assertion of personal jurisdiction over
3 her is constitutionally fair even where the claims are unrelated to those contacts. *See Tuazon v.*
4 *R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales*
5 *de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). A state court has general jurisdiction over
6 the state's own residents, for example.

7 Even where there is no general jurisdiction over a defendant, specific jurisdiction exists
8 when there are sufficient minimal contacts with the forum state such that the assertion of
9 personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"
10 *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316
11 (1945) (quoting *Milliken*, 311 U.S. at 463). The standard has been restated using different
12 verbiage. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that
13 there be some act by which the defendant purposefully avails itself of the privilege of conducting
14 activities within the forum State, thus invoking the benefits and protections of its laws." (citing
15 *Int'l Shoe Co.*, 326 U.S. at 319)); *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297
16 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that
17 a product will find its way into the forum State. Rather, it is that the defendant's conduct and
18 connection with the forum State are such that he should reasonably anticipate being haled into
19 court there." (citing *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 97–98 (1978))). From these
20 cases and others, the Ninth Circuit has developed a three-part test for specific jurisdiction:

21 (1) The non-resident defendant must purposefully direct his activities or
   consummate some transaction with the forum or resident thereof; or perform some
22 act by which he purposefully avails himself of the privilege of conducting
   activities in the forum, thereby invoking the benefits and protections of its laws;
23
   (2) the claim must be one which arises out of or relates to the defendant's
24 forum-related activities; and

25 (3) the exercise of jurisdiction must comport with fair play and substantial justice,

i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

> The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.

*Id.* (citations omitted). The "purposeful direction" option of the first prong uses the "*Calder*-effects" test, under which "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc)). The third prong is a seven-factor balancing test, under which a court considers:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 107, 1112 (9th Cir. 2004)).

**2.    Failure to State a Claim**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule

12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In other words, under the modern interpretation of Rule 8(a), a plaintiff must do more than specify the legal theory under which he seeks to hold a defendant liable; he also must identify the theory of his own case so that the court can properly determine not only whether any such legal theory exists (*Conley* review), but also whether he has any basis for relief under such a theory even assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which

are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### B. Default Judgment

Obtaining default judgment is a two-step process under Rule 55. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *see also* Fed. R. Civ. P. 55.  First, the clerk must enter the party's default. Fed. R. Civ. P. 55(a).  The party seeking default judgment must then petition the court for a default judgment. *Id.* at 55(b)(2).  "A grant or denial of a motion for the entry of default judgment is within the discretion of the court." *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956).  A court may, "for good cause shown," set aside an entry of default. *See McMillen v. J.C. Penney Co.*, 205 F.R.D. 557, 558 (D. Nev. 2002). Default judgments are generally disfavored, so courts should attempt to resolve motions for default judgment to encourage a decision on the merits. *See id.* (citing *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001)).  In order for a court to determine whether to "exercise its discretion to enter a default [judgment]," the court should consider seven factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* (citing *Eitel*, 782 F.2d at 1471–72).

///

### III. ANALYSIS

#### A. Nowak's Motion to Dismiss the TPC

Nowak argues that there is no general jurisdiction over her in Nevada because she has only ever been to Nevada once, on vacation, and she has no other contacts with the state. Signature Bank concedes the point, and the Court agrees.

Nowak also argues that there is no specific jurisdiction over her, because the only act she is alleged to have committed is having notarized the Quitclaim Deed in Illinois. The Court disagrees. Nowak's notarization of a legal document purporting to affect title to real property in Nevada is a sufficient minimal contact to render her susceptible to personal jurisdiction in Nevada if that act is alleged to have constituted a tort. The act of notarizing a document purporting to affect title to real property in Nevada is an act purposely directed towards Nevada, whose effects are certain to be felt there, and the claim in this case arises out of that activity. Purposeful availment and purposeful direction are different, and either is sufficient. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Purposeful availment usually consists of some activity conducted in the forum state. *See id.* However, "[a] showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803. Nowak argues that Signature Bank cannot satisfy the first prong of the specific jurisdiction test because she conducted no relevant activities within Nevada. But if Signature Bank can show that Nowak *directed* her activities to Nevada from without the state, the first prong of the specific jurisdiction test is satisfied. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and

wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Id.* at 476. If Nowak's notarization of the Quitclaim Deed affecting title to real property in Nevada constituted a fraud upon Plaintiff (a Nevada resident), there is specific jurisdiction over her in Nevada regardless of where she performed the act.

The remaining issue is whether Nowak has presented a compelling case that it would be unreasonable to hale her into a Nevada court based upon her actions. Nowak argues only that it would be inconvenient for her to fly to Nevada from Illinois for deposition and trial, and that it would not be inconvenient for Signature Bank to file suit in Illinois instead of Nevada, as it is a New York resident.

The Court finds that personal jurisdiction over Nowak in Nevada is reasonable in this case. First, Nowak has meaningfully interjected herself into the state's affairs, having notarized a document affecting real property in the state. Second, the burden of defending in Nevada would be significant for this individual Defendant, but not so great as to pose a due process problem. Defendant at most would have to fly to Nevada for a deposition and a trial. The travel time will only add perhaps four days to the time she would spend at deposition and trial in Illinois. Third, there is no conflict with the sovereignty of Illinois. Fourth, Nevada's interest in adjudicating the dispute is significant. Although the Third-party Plaintiff is a New York resident, the Third-party Defendant is an Illinois resident, and only Plaintiff is a Nevada resident, Nevada has a great interest in the adjudication of a claim concerning alleged fraudulent execution and recordation of an instrument affecting real property in the state. Fifth, it would be more efficient judicially to resolve the third-party claims in this Court along with the Complaint itself. Sixth, the importance of the Nevada forum to Signature Bank's interest in convenient and effective relief is not particularly great. Seventh, Illinois provides an alternative forum. On balance, the Court finds

1  that Nowak has not provided a compelling case that it would be unreasonable to subject her to
2  personal jurisdiction in Nevada.
3      Nowak next attacks the sufficiency of the claims.  Nowak first argues that a third-party
4  claim against her for indemnity is procedurally improper, because equitable indemnity in Nevada
5  requires that the third-party plaintiff has already paid a judgment or settlement.  Although a cause
6  of action for indemnity does not arise in Nevada until the party seeking indemnity has discharged
7  a legal obligation through settlement or judgment, *Rodriguez v. Primadonna Co., LLC*, 216 P.3d
8  793, 801 (Nev. 2009) (citing *The Doctors Co. v. Vincent*, 98 P.3d 681, 686 (Nev. 2004)), a
9  federal court may entertain such a cause of action "prematurely" so long as (1) any resulting
10 judgment against a third-party defendant is made contingent on the defendant's payment to the
11 plaintiff or (2) the court stays any judgment against a third-party defendant until the defendant
12 shows that it has paid the plaintiff, *Andrulonis v. United States*, 26 F.3d 1224, 1233–34 (2d Cir.
13 1994) (holding that the "may be liable" language of Rule 14(a) permitted a contribution claim in
14 federal court by a defendant even before the defendant had been held liable to the plaintiff,
15 despite New York law to the contrary).
16     Second, Nowak argues that a third-party pleading is not permitted between joint or
17 concurrent tortfeasors with no legal relationship to one another. *See Reid v. Royal Ins. Co.*, 390
18 P.2d 45, 47 (Nev. 1964).  Nowak is not alleged by Signature Bank to be a joint or concurrent
19 tortfeasor, but the *only* tortfeasor, whose active liability has potentially made Signature Bank
20 passively liable.  In other words, Signature Bank, according to the TPC, could potentially lose its
21 interest in the AOR and DOT via Plaintiff's quiet title claim through no fault of its own, but
22 through the fault of Nowak.
23     Third, Nowak argues that the third-party claim for fraud is untimely under the three-year
24 statute of limitations. *See* Nev. Rev. Stat. § 11.190(3)(d).  In anticipation of a discovery-rule
25 counter-argument, Nowak argues that a plaintiff must plead facts concerning the time and

1  manner of discovery and the circumstances excusing delayed discovery. *See Prescott v. United*
2  *States*, 523 F. Supp. 918, 940 (Nev. 1981) (Foley, J.).  Signature Bank correctly notes that "[t]he
3  express requirements of *Prescott* are not the law of Nevada." *Siragusa v. Brown*, 971 P.2d 801,
4  807 n.6 (Nev. 1998).  Rather, a claim accrues in Nevada when the plaintiff "discovers or should
5  have discovered all of the necessary facts constituting [the] claim." *Id.* at 807.  It cannot
6  reasonably be said that Signature Bank should have discovered the alleged fraud when Plaintiff
7  himself only discovered the fraud in 2011 based upon his personal knowledge that he is not the
8  person who signed the Quitclaim Deed he had just been informed existed.

        **B.**        **Plaintiff's Motion for Default Judgment Against Lagori**

10  The state court's entry of default is as effective in this Court as if it had been entered by
11  the Clerk of this Court. *See, e.g.*, *Butner v. Neustadter*, 324 F.2d 783, 785–86 (9th Cir. 1963)
12  ("The federal court takes the case as it finds it on removal and treats everything that occurred in
13  the state court as if it had taken place in federal court.  Therefore, this default judgment should be
14  treated as though it had been validly rendered in the federal proceeding.").  The Court finds that
15  Plaintiff is entitled to a default judgment.  The *Eitel* analysis shows that there is no excusable
16  neglect.  Lagori has failed to appear in state court or this Court.  The claim appears to have merit,
17  and Plaintiff will be prejudiced by an inability immediately to adjudicate the claim.

18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 9) is DENIED.

IT IS FURTHER ORDERED that the Motion for Default Judgment (ECF No. 14) is GRANTED.

JUDGMENT IS HEREBY ENTERED in favor of Plaintiff and against Defendant Philip Sabatino Lagori, as follows: the Quitclaim Deed by Plaintiff in favor of Philip Sabatino Lagori recorded as Instrument No. 20070618:0000351 with the Clark County Recorder is void for forgery. Plaintiff is the sole owner of the property at 95 E. Windmill Ln., Las Vegas, NV 89123, and Lagori had no interest in the property that he could have transferred to Signature Bank or any other entity. Plaintiff is entitled to attorney's fees of $11,601.50 and costs of $719 against Lagori.

IT IS SO ORDERED.

Dated this 19th day of October, 2012.

_____
ROBERT C. JONES
United States District Judge