## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PHILIP SABATINO OGNIBENE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 2:12-cv-01307-RCJ-GWF |
| vs. ) | |
| ) | |
| PHILIP SABATINO LAGORI et al., ) | **ORDER** |
| ) | |
| Defendants. ) | |

This case arises out of the alleged forgery of a quitclaim deed. Pending before the Court is a Motion for Reconsideration and to Set Aside Order and Default Judgment (ECF No. 18). For the reasons given herein, the Court grants the motion.

**I.      FACTS AND PROCEDURAL HISTORY**

Plaintiff Philip Sabatino Ognibene has been the owner of real property at 95 E. Windmill Ln., Las Vegas, NV 89123 (the "Property") since December 11, 1992, except for a "brief period in 2003" when he transferred title to Defendant Philip Sabatino Lagori. (*See* Compl. ¶¶ 4–6, Jan. 20, 2012, ECF No. 1-6). When Plaintiff submitted an insurance claim based upon damage to the property sustained during a windstorm in the summer of 2011, the insurance company made out the reimbursement check to Lagori instead of Plaintiff because it believed that Lagori was the owner of the Property. (*Id.* ¶¶ 8–11). Plaintiff then discovered that on June 18, 2007, a quitclaim deed (the "Quitclaim Deed") to the Property had been recorded in Clark County purportedly by

Plaintiff in favor of Lagori. (*Id.* ¶¶ 12–13).  The signature on the Quitclaim Deed is not Plaintiffs, but was forged, and Plaintiff does not know who appeared before the Illinois notary listed on the Quitclaim Deed, Carrie Nowak; Plaintiff was not in Illinois on the date of the jurat, May 15, 2007. (*See id.* ¶¶ 14–17).  Plaintiff believes Lagori caused someone to forge the Quitclaim Deed, or did so himself, with the assistance of an old photo identification card of Plaintiff's to which Lagori had access. (*Id.* ¶¶ 18–19).  Plaintiff believes Lagori may have capitalized on their similar appearance and similar names; Lagori is Plaintiff's son. (*See id.* ¶¶ 20–21).  Plaintiff believes it is Lagori who then executed a deed of trust ("DOT") and assignment of rents ("AOR") in favor of Defendant Signature Bank. (*See id.* ¶ 22).  The DOT and AOR were recorded on October 16, 2007, and the DOT was later recorded again on July 18, 2008 to correct the name of the trustee. (*See id.* ¶¶ 24–26).

     Plaintiff sued Defendants in state court on January 20, 2012 on seven causes of action: (1) quiet title; (2) declaratory relief; (3) conversion (Lagori only); (4) unjust enrichment (Lagori only); (5) fraud (Lagori only); (6) constructive fraud (Lagori only); and (7) exploitation of an elder person.  Signature Bank answered the Complaint and filed a Crossclaim ("CC") against Lagori and a Third-party Complaint ("TPC") against Nowak for indemnity, fraud, breach of contract (Lagori only), and unjust enrichment (Lagori only). (*See* Answer, CC, and TPC, Mar. 1, 2012, ECF No. 1-10).  The clerk of the state court entered default in favor of Signature Bank and against Lagori as to the CC. (*See* Default, Apr. 18, 2012, ECF No. 1-13).  The clerk of the state court then entered default in favor of Plaintiff and against Lagori as to the Complaint. (*See* Default, May 2, 2012, ECF No. 1-14).  Plaintiff and Signature Bank applied to the state court for respective default judgments against Lagori as to the Complaint and the CC, but the state court did not decide those motions before removal.

     After removal, Nowak asked this Court to dismiss the indemnity and fraud claims Signature Bank had brought against her via the TPC, and Plaintiff asked the Court to grant him a

1  default judgment against Lagori.  The Court denied Nowak's motion but granted Plaintiff's and
2  entered default judgment against Lagori.  Signature Bank has asked the Court to reconsider its
3  grant of default judgment to Lagori and to set that judgment aside because it affects Signature
4  Bank's security interest in the Property.

5  **II.     LEGAL STANDARDS**

6       "A motion to alter or amend a judgment must be filed no later than 28 days after the entry
7  of the judgment." Fed. R. Civ. P. 59(e).  Signature Bank's motion is timely under Rule 59(e).
8  The motion is also timely if considered as a motion for relief from judgment or order for fraud
9  under Rule 60(b)(3). *See* Fed. R. Civ. P. 60(b)(3), (c)(1).

10 **III.    ANALYSIS**

11      Signature Bank notes that insofar as the judgment against Lagori purports to quiet title to
12 the Property, it was in essence a ruling in summary judgment on the in rem quiet title claim, to
13 which Signature Bank was a party, but to which Signature Bank did not have sufficient time to
14 respond under the rules.  Signature Bank notes that documents relating to Lagori's bankruptcy in
15 the Northern District of Illinois indicate collusion between Lagori and Plaintiff fraudulently to
16 deprive Signature Bank of its security interest in the Property.  Although Plaintiff responds
17 vigorously that he has not colluded with Lagori, the Court finds that Signature Bank has made a
18 sufficient case for the Court to set aside the default judgment pending full discovery.

19      Signature Bank notes that Lagori filed for Chapter 7 bankruptcy protection in Illinois in
20 June 2012.  The petition in that case, No. 12-22612, lists only two pieces of real estate as assets,
21 both in Hawthorne Woods, IL. (*See* Vol. Pet. sched. A, ECF No. 18, at 22).  The Property at issue
22 in the present case is not listed as an asset despite the existence of the quitclaim deed in Lagori's
23 favor.  Although Lagori did not list the Property as an asset, he listed Signature Bank as an
24 "unsecured creditor" for "personal guarantee of corporate debt" in the amount of $750,005.17,
25 which likely represents the loan Lagori obtained from Signature Bank against the Property after

obtaining the property via the disputed quitclaim. (*See id.* sched. F, ECF No. 18 at 36). Nor did Lagori list the existence of the present action (then pending in state court) in his petition. (*See generally id.*). Signature Bank also notes that Plaintiff admitted he had previously transferred the Property to Lagori in 2003 before Lagori's alleged quitclaim fraud in the present case. Signature Bank also adduces a copy of a Rule 11 sanctions motion that Nowak's counsel had previously threatened to file against Signature Bank, wherein Nowak notes that "[Plaintiff] and Lagori worked together to get the loan at issue in this case." (*See* Mot. Rule 11 Sanctions 5:10–11, ECF No. 18, at 68).

Signature Bank also attaches the affidavit of Scott Perri, which was attached to Nowak's proposed motion. (*See* Perri Aff., Sept. 24, 2012, ECF No. 18, at 85). That affidavit is extremely damning. Perri attests that he, not Plaintiff or Lagori, resides at the Property. (*See id.* ¶¶ 1–2). Plaintiff told Perri that Plaintiff has lived in California for eighteen years. (*See id.* ¶ 7). Perri met Plaintiff in August 2011, at which time the Property was "non-livable." (*Id.* ¶ 3). Perri agreed to do some work on the Property, and Plaintiff informed Perri that he would not receive the insurance payments until all the related work had been completed. (*Id.* ¶ 4). As of the date of the affidavit, September 24, 2012, Plaintiff owed Perri $17,300 in labor. (*Id.* ¶ 6). Plaintiff had instituted a criminal complaint against Lagori, and Perri was present when Plaintiff spoke to the investigator. (*Id.* ¶¶ 8–9). During that interview, *Plaintiff told the investigator that in 2007 he was aware of the loan that Lagori had taken out using the Property as collateral, that he had helped Lagori prepare the paperwork for the loan*, and that he and Lagori had done this numerous times in the past. (*Id.* ¶¶ 10–11). Plaintiff told the investigator that Lagori had given Plaintiff $50,000 from the proceeds of that loan. (*Id.* ¶ 12). Plaintiff told the investigator that he later changed his mind about the loan. (*Id.* ¶ 14).[1] Plaintiff also told the investigator that he had

---

[1] Perri also attests to statements allegedly made to him by a previous tenant of Plaintiff relevant to the present case, but those statements appear to be inadmissible hearsay. Plaintiff's

Page 4 of 6

sent Lagori the first insurance check to endorse and send back to Plaintiff, which Lagori did. (*Id.* ¶ 16). Based upon this interview and the public records concerning the Property, the Las Vegas Metropolitan Police Department later wrote to Plaintiff informing him that there was no indication of criminal intent by Lagori. (*See* Letter, Mar. 22, 2012, ECF No. 18, at 88 (authenticated by Perri in ¶ 8 of his affidavit as having been sent to the Property)).

    Signature Bank is correct that these circumstances are extremely suspicious. Signature Bank very reasonably concludes that it appears Plaintiff and Lagori may have conspired to obtain the loan against the Property in Lagori's name, secret the money away or otherwise spend it, and then have Lagori file for bankruptcy to discharge his debt on the note while also filing the present collusive lawsuit by Plaintiff against Lagori in order to destroy Signature Bank's security interest in the Property. The Court was previously unaware of the potential fraud issue and now believes that full discovery is required in this case before entering a final ruling on the quiet title action. Plaintiff's response, which consists primarily of quasi-ad hominem accusations that Signature Bank is "paranoid" and that its evidence is a "distract[ion]," is unimpressive. This is not, as Plaintiff argues, a "fishing expedition" by Signature Bank. Signature Bank has produced admissible evidence, and pretty decent evidence at that, even before discovery, of having already "caught a fish," to expand Plaintiff's metaphor. Contrary to Plaintiff's arguments, Lagori's bankruptcy is intensely relevant to the present action—not the bare fact that he filed for bankruptcy, of course, but the fact that he omitted the Property as an asset while listing the debt on the Property as a liability, all while Plaintiff (who according to separate credible testimony knew about the loan, helped Lagori obtain it, and shared in the proceeds) filed the present lawsuit against him to destroy the security interest in the Property. Maybe there was collusion, and maybe there wasn't, but Plaintiff cannot seriously argue that the evidence Signature Bank

---

own alleged statements, of course, are non-hearsay.

adduces is irrelevant or that it cannot support relief from the in rem default judgment against the Property in which Signature Bank has an interest. The evidence creates serious questions of material fact as to the quiet title action. The case will proceed to discovery.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Reconsideration and to Set Aside Order and Default Judgment (ECF No. 18) is GRANTED. The Order (ECF No. 16) is AMENDED to deny default judgment, and the Motion for Default Judgment (ECF No. 14) is DENIED.

IT IS FURTHER ORDERED that the Default Judgment (ECF No. 17) is VACATED.

IT IS SO ORDERED.

Dated this 11th day of March, 2013.

_____
ROBERT C. JONES
United States District Judge